## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| CHRISTIE STROGGINS WOODS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:23-cv-02650-JPM-atc |
| v. | ) | |
| | ) | |
| THE INDEPENDENT ORDER OF | ) | |
| FORESTERS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND DISMISSING AS MOOT PLAINTIFF'S MOTION TO STRIKE

Before the Court are Motions for Summary Judgment filed by Plaintiff Christie Stroggins Woods[1] ("Plaintiff" or "Mrs. Woods") and Defendant The Independent Order of Foresters ("Defendant" or "Foresters"). (ECF Nos. 36, 38.) Also before the Court is Plaintiff's Motion to Strike Defendant's Statement of Relevant Factual Background. (ECF No. 56.) Plaintiff claims Defendant has wrongfully withheld the death benefits owed her under a valid life insurance policy in the name of her deceased husband, Carey L. Woods[2] ("Mr. Woods"). (ECF No. 1-2; ECF No. 38-2 at PageID 509.) Defendant claims Mr. Woods made certain misrepresentations on his application that rendered his policy—and Defendant's obligation to pay Plaintiff any death benefits—void. (ECF No. 36-1 at PageID 337.) Both Parties assert they

---

[1] In the Complaint, Plaintiff is referred to as "Christine" in the caption and at least once in the text. (ECF No. 1-2 at PageID 8–9.) Plaintiff avers that her first name is Christie, not Christine. (See ECF No. 55 at PageID 1798 n.1.) Thus, the Case Caption is **CORRECTED** to accurately reflect Plaintiff's first name.

[2] In the Complaint, Mr. Woods' first name is spelled as "Cary." (ECF No. 1-2 ¶ 4.) The Court uses the spelling from Plaintiff's Statement of Undisputed Material Facts, which is undisputed by Defendant. (See ECF No. 53 at PageID 1636.)

are entitled to judgment as a matter of law based on the undisputed material facts.  (ECF No. 36-1 at PageID 337; ECF No. 38 at PageID 498.)

For the reasons discussed below, Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED**.  Plaintiff's Motion to Strike is also **DISMISSED AS MOOT**.

## I.    BACKGROUND

This action concerns the validity of a term life insurance policy issued by Defendant for the life of Mr. Woods.  (See ECF No. 38-2 at PageID 510–11; ECF No. 36-1 at PageID 337.)

### A.    Undisputed Facts

i.    Overview

Plaintiff is a citizen and resident of Memphis, Tennessee.  (ECF No. 1-2 ¶ 1.)  Defendant is a fraternal benefit society organized and existing under the laws of Canada with its principal place of business in Toronto, Canada.  (ECF No. 1 ¶ 9.)

On May 18, 2021, Mr. Woods applied for an individual life insurance policy with Defendant.  (ECF No. 1-2 ¶ 4; ECF No. 53 at PageID 1637.)  On May 20, 2021, Defendant issued a Term Life Insurance Certificate (the "Certificate") in the amount of $78,000.  (ECF No. 1-2 ¶ 5; ECF No. 53 at PageID 1637.)  The Certificate named Plaintiff, Mr. Woods' wife, as the primary beneficiary.  (ECF No. 36-2 at PageID 358; ECF No. 53 at PageID 1637.)   The Certificate consists of the terms of the policy.  (ECF No. 53 at PageID 1637.)  One policy term was a two-year contestability period.  (See id. at PageID 1638–39; ECF No. 55 at PageID 1802 ("Foresters had the right to contest the validity of the Insurance Certificate within two years of its issuance.").)

2

On May 31, 2021, Mr. Woods died in an unrelated shooting incident.  (ECF No. 53 at PageID 1639.)  On August 16, 2021, Plaintiff made a claim for full benefits available under the Certificate.  (See ECF No. 53 at PageID 1639; ECF No. 55 at PageID 1804.)[3]  Per the terms of the Certificate, Defendant initiated a review of Mr. Woods' Application for Individual Life Insurance (the "Application").  (ECF No. 53 at PageID 1638–39; see also ECF No. 21 at PageID 76 (incontestability provision of the Certificate).)   On March 8, 2022, Defendant denied Plaintiff's claim for death benefits under the Certificate.  (ECF No. 53 at PageID 1639.)

      ii.    Mr. Woods' Medical History

Mr. Woods had a history of hypertension or hypertensive disorder due to high blood pressure since at least 2019 through March 2021.  (ECF No. 53 at PageID 1640.)   His hypertension was treated with medication.  (Id.)

On September 30, 2020, Kafila Jaipuri, NP ("NP Jaipuri") of Primary Care Specialists Guthrie diagnosed Mr. Woods with an "elevated serum creatinine [level] of 1.36 mg/dL" from a specimen collected two weeks prior.  (ECF No. 53 at PageID 1640.)  NP Jaipuri "used an ICD-10-CM diagnosis Code of R.79.89[4] and advised Mr. Woods of 'good [blood] pressure management and plenty of water.'"  (ECF No. 53 at PageID 1640 (internal citations omitted).)

On March 3, 2021, Mr. Woods went to the clinic at Primary Care Specialists Walnut Grove ("Walnut Grove Clinic").[5]  (ECF No. 53 at PageID 1640; ECF No. 36-8 at PageID 424.)

---

[3] While it is unclear what other material on the record directly corroborates this date, Plaintiff does not dispute the date for summary judgment purposes.  (ECF No. 55 at PageID 1804.)  Thus, the Court treats it as undisputed.
[4] Code R.79.89 corresponds to "other specified abnormal findings of blood chemistry" under the umbrella of "abnormal findings on examination of blood, without diagnosis."  (ECF No. 53 at PageID 1640 (cleaned up).) The International Classification of Diseases (ICD) "is a classification system developed collaboratively between the World Health Organization (WHO) and 10 international centers so that the medical terms reported by physicians ... can be grouped together for statistical purposes."  Frohn v. Globe Life & Accident Ins. Co., 99 F.4th 882, 895 (internal citations omitted).
[5] Both Primary Care Specialists Guthrie and Walnut Grove were part of the Regional One Health network at the time.

Mr. Woods' visit was regarding blood appearing in his semen for the prior two weeks[6] following

sexual intercourse.  (ECF No. 53 at PageID 1640; ECF No. 36-8 at PageID 424.)    While the

Walnut Grove Clinic medical records list the reason for the visit as "blood in urine," the chief

complaint was "blood in semen."  (ECF No. 36-8 at PageID 424.)[7]  The visit notes' narrative

for the history of the present illness discusses the blood in Mr. Woods' semen and elevated

blood pressure without any mention of blood in his urine.  (Id.)  The provider, Shawanda F.

Motlow, NP ("NP Motlow") diagnosed Mr. Woods with "blood in semen."  (ECF No. 53 at

PageID 1640–41.)[8]  NP Motlow also ordered lab work and a "urology referral . . . for further

evaluation and management."  (Id.)

The Walnut Grove Clinic medical records also note Mr. Woods' elevated blood pressure

during the March visit [9] and history of hypertensive disorder.  (ECF No. 53 at PageID 1641.)

NP Motlow instructed Mr. Woods to change his hypertension medication, including restarting

Lisinopril, and issued a cardiology referral order for blood pressure management.  (ECF No. 53

at PageID 1641.)  Based on Mr. Woods' previous elevated serum creatinine level of 1.36, NP

Motlow "ordered a [comprehensive metabolic panel (CMP)] to review and listed an ICD-10-

CM diagnosis Code of R.79.89."  (Id.)  The CMP blood draw revealed Mr. Woods' serum

creatinine level was within normal limits.  (Id. at PageID 1642.)[10]

---

[6] It is undisputed for the purposes of this Order that Mr. Woods experienced blood in his semen following sexual intercourse only for that limited two-week period.  (ECF No. 53 at PageID 1642–43.)
[7] While Plaintiff disputes that the reason for Mr. Woods' visit was blood in his urine, (ECF No. 55 at PageID 1805), the medical records on which she otherwise relies lists that information. (ECF No. 36-8 at PageID 424.)
[8] Motlow used an ICD-10-CM diagnosis Code R.36.1, which corresponds to hematospermia under the urethral discharge category.  (ECF No. 53 at PageID 1641.)
[9] Mr. Woods' blood pressure was initially 161/127 and rechecked at 160/118.  (ECF No. 53 at PageID 1641.)
[10] A test of Mr. Woods' "PSA" was "within normal limits with a range of 0.76-1.27," and his tests for sexually transmitted diseases and infections and HIV were all negative.  (Id. at PageID 1642.) Other test notes included "UA: (+2) Protein…, Negative: Blood…"  (ECF No. 36-8 at PageID 425.)

The Walnut Grove Clinic records contained an assessment plan for Mr. Woods for his hypertensive disorder, elevated serum creatinine, and blood in semen.  (ECF No. 53 at PageID 1642.)  The plan for his hypertensive disorder, included, among others, the change in medication and the "[c]radiology referral for blood pressure management."  (ECF No. 36-8 at PageID 425.) The plan for his elevated serum creatinine was only the repeat CMP.  (Id. at PageID 426.)  The plan for the blood in his semen was lab work and "[u]rology referral ordered for further evaluation and management."  (Id.)  The medical records listed referral orders for cardiology related to Mr. Woods' hypertensive disorder and for urology related to the blood in Mr. Woods' semen.  (ECF No. 53 at PageID 1643.) [11]  The records also noted a return visit to the Walnut Grove Clinic for Mr. Woods in one month.  (Id.)

On March 4, 2021, NP Motlow instructed her clinicians to have a follow-up call with Mr. Woods about restarting Liprosinil.  (See ECF No. 36-8 at PageID 430; ECF No. 55 at PageID 1806.)  The Walnut Grove Clinic sent a letter dated March 5, 2021, requesting Mr. Woods contact the clinic.  (ECF No. 53 at PageID 1642.)[12]  On the morning of March 10, 2021, the Walnut Grove Clinic notified Mr. Woods via phone about his lab results from the previous visit.  (Id.)[13]  It also attempted to contact Mr. Woods via phone later in the day about the pending referral orders.  (Id.)

---

[11] The Referral Orders section of the Walnut Grove Clinic notes listed, "Referral Ambulatory, Cardiology, Hypertensive disorder, Uncontrolled Hypertension, 03/15/21[.]  Referral Ambulatory, Urology, Blood in semen, Blood in semen, 04/01/21[.]"  (ECF No. 36-8 at PageID 426.)

[12] Defendant cites this letter as proof that "Regional One Health notified Mr. Woods' providers at [the Walnut Grove Clinic] on March 5, 2021 that Mr. Woods had not communicated regarding his cardiology and urology referrals."  (ECF No. 37 at PageID 493.)  The letter, however, does not support that fact.  (See ECF No. 53 at PageID 1642.)

[13] There is a dispute over whether the referrals department or Mr. Woods' medical care providers called Mr. Woods.  (See ECF No. 37 at PageID 493; ECF No. 55 at PageID 1807, 1815.)  It is undisputed, however, that an employee of the Walnut Grove Clinic called Mr. Woods.  (See id.)  It is not material which exact employee did so.

There is no evidence that Mr. Woods ever completed appointments with a cardiologist or urologist under his referral orders. (ECF No. 55 at PageID 1808 (undisputed for summary judgment purposes only).)

### iii. Application

On May 18, 2021, Mr. Woods completed the Application with Shonda Crawford ("Crawford"), a producer employed by Defendant, via Zoom. (See ECF No. 53 at PageID 1637; ECF No. 55 at PageID 1801.) The Application consisted of nine pages of questions and two overflow pages. (ECF No. 36-2.)

Question 12(b) asked: "Within the past 2 years, have you[ b]een advised to have a check up, consultation, medication, treatment, surgery, hospitalization, lab test or diagnostic test (other than for HIV) that has not yet been started or completed, or the results of which are not yet known?" (ECF No. 36-2 at PageID 359.) Mr. Woods responded, "No." (Id.; ECF No. 53 at PageID 1637.)

Question 15 asked:

Within the past 10 years, have you been diagnosed with, or received treatment or medication, tested positive or been given medical advice for:

(a) Diabetes, *high blood pressure*, a disease or disorder of the blood or lymphatic system, coronary artery disease, heart murmur, chest pain, irregular heartbeat, aneurysm, stroke, transient ischemic attack, congestive heart failure (CHF), a disease or disorder of the arteries or valves, peripheral vascular or arterial disease (PVD or PAD), or had a heart attack, heart surgery, heart procedure or circulatory surgery?
…

(f) *Blood in the urine*, hepatitis, Crohn's disease, Systemic Lupus, cirrhosis, *or a disease or disorder of the* liver, prostate, bladder, *kidney*, *genito-urinary organs*, connective tissue or the digestive or immune system (other than HIV)?

(ECF No. 36-2 at PageID 360 (emphasis added).) Mr. Woods answered "Yes" to 15(a) and "No" to 15(f). (Id.; ECF No. 53 at PageID 1638.) As an addendum to his affirmative answer to

6

15(a), Mr. Woods disclosed his high blood pressure since 2019 and prescription for Lisinopril as treatment.  (ECF No. 36-2 at PageID 360, 366; ECF No. 53 at PageID 1638.)

The Application included the following declarations to which Mr. Woods agreed: "All statements made in this Application shall be representations and not warranties. . . . The statements, answers, and representations contained in this Application are full, complete and true, to the best of my knowledge and belief."  (ECF No. 53 at PageID 1638 (quoting ECF No. 38-3 at PageID 538).)

Plaintiff was present for the Zoom call discussing Mr. Woods' Application.  (Woods Dep. 52:25, 53:1–5, ECF No. 54-1.)  The conversation lasted one hour.  (Id.)  During the call, there was no mention about Mr. Woods' experience of blood in his semen or the pending referral orders.  (Id. 53:12-19.)[14]  Crawford averred that "Mr. Woods represented that he understood the terms and questions found on the Application."  (ECF No. 55 at PageID 1801.)

### iv.    Contestability Review and Benefits Denial

The Certificate had a two-year contestability period, which allowed Defendant to review the Application and contest the subsequent Certificate if a claim for benefits was made during that period.  (ECF No. 53 at PageID 1638–39.)  As Plaintiff made a claim within months of the issuance of the Certificate, Defendant exercised its right to review the Application.  (See ECF No. 55 at PageID 1804.)

In a letter dated March 8, 2022 ("Denial Letter"), Defendant denied Plaintiff's claim for death benefits under the Certificate.  (ECF No. 53 at 1639; ECF No. 38-3 (Denial Letter).)

---

[14] Plaintiff attempts to dispute this information, highlighted in Defendant's Motion, by stating that she did not witness Mr. Woods complete and sign the emailed copy of the Application after the call.  (ECF No. 55 at PageID 1815 (citing Woods Dep. 51:12–25, 52:1–24, ECF No. 54-1).)  This does not properly dispute the fact that there was no such mention or discussion during the Zoom call, a fact gleaned from Plaintiff's own deposition testimony.  (See Woods Dep. 53:12–19, ECF No. 54-1.)

Defendant rescinded the Certificate based on allegations that Mr. Woods incorrectly answered
"No" to Question 12(b).  (Id.)  In support, Defendant said Mr. Woods did not disclose that
within the past two years he was "referred to have a consultation, specifically with [a] urologist,
that was not started, completed or for which the results were not known."  (ECF No. 53 at
PageID 1639 (quoting ECF No. 38-3 at PageID 529).)  The Denial Letter further stated that
Defendant would not have issued the Certificate "[h]ad accurate and complete information
regarding Carey L. Woods' medical history been disclosed at the time the Application was
completed."  (Id.)  The Denial Letter informed Plaintiff that no death benefit would be payable
to her.  (ECF No. 38-3 at PageID 529.)  All premiums already paid were returned to Plaintiff.
(Id.)

The Denial Letter also stated, "Foresters reserves all rights and defences, including any
and all claims and defences that it may have or further discovery, whether or not expressly
stated herein, concerning this claim for certificate benefits."  (ECF No. 37 at PageID 494–95
(citing ECF No. 38-3 at PageID 529).)

Defendant's Chief Underwriter, Doug Parrott ("Parrott"), subsequently asserted that Mr.
Woods misrepresented his answer to Question 12(b) by "failing to disclose the referral to
urology for the blood in his semen and elevated creatinine level, and a referral to cardiology for
his hypertension [or] high blood pressure."  (ECF No. 53 at PageID 1643.)  Parrott also asserted
that Mr. Woods misrepresented his answer to Question 15(f) by failing to disclose that "he had
a disease or disorder of his kidney due to the elevated creatinine and a genitourinary disease or
disorder."  (Id. at PageID 1643–44.)  Defendant's "underwriters indicated that the failure to
disclose the referrals to urology and cardiology, and the genitourinary and kidney disorders

materially increased [Defendant's] risk of loss and they would not have issued the Certificate had they had this complete medical information."  (ECF No. 53 at PageID 1644.)

### B.    Procedural History

Plaintiff filed her Complaint for Breach of Contract on or about August 3, 2023, in Shelby County Chancery Court.  (ECF No. 1-2.)  She seeks the death benefits allegedly due under the Certificate, valued at $78,000.  (Id. ¶¶ 4–5, 8.)  Plaintiff served Defendant via the Tennessee Department of Insurance on September 12, 2023.  (ECF No. 1 at PageID 1; ECF No. 1-2 at PageID 11.)  Defendant timely removed the matter to this Court on October 12, 2023. (Id. at PageID 3.)

On May 14, 2024, Plaintiff moved to compel Defendant to produce certain documents in response to Plaintiff's discovery requests.  (ECF No. 33.)  The Parties then filed cross-motions for summary judgment on May 30, 2024.  (ECF Nos. 36, 37, 38.)  Defendant filed its Statement of Undisputed Material Facts separately from its Motion for Summary Judgment. (See ECF Nos. 36, 37.)

The Court referred Plaintiff's Motion to Compel to Magistrate Judge Annie T. Christoff on June 21, 2024.  (ECF No. 44.)  The Magistrate Judge heard the Parties' arguments and granted Plaintiff's motion on June 26, 2024.  (ECF No. 47.)  That same day, the Parties filed a joint motion for extension of time to respond to summary judgment and allow for the incorporation of material produced pursuant to the Magistrate Judge's order to compel.  (ECF No. 48.)  The Court granted the Parties' joint motion and continued the jury trial date and pretrial deadlines.  (ECF No. 49.)

The Parties filed their respective Responses in Opposition to the Motions for Summary Judgment on July 26, 2024.  (ECF Nos. 52, 54.)  That same day, Defendant filed a Response to

Plaintiff's Statement of Undisputed Material Facts, which largely did not dispute the stated facts. (ECF No. 53.) Plaintiff also filed a Response to Defendant's Relevant Factual Background Contained in Its Motion for Summary Judgment. (ECF No. 55.) Plaintiff contemporaneously filed a Motion to Strike Defendant's "Relevant Factual Background" allegedly pursuant to Federal Rule of Civil Procedure 56. (ECF No. 56.)[15] Defendant filed its Response in Opposition on August 9, 2024. (ECF No. 58.) Thus, all Motions are fully briefed.[16]

## II.    LEGAL STANDARD

A moving party is entitled to summary judgment "if [it] shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For the purposes of summary judgment, a fact is "material" if "proof of that fact would establish or refute an essential element of the cause of action or defense." Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the non-moving party." Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). First, the "moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If satisfied, the burden then shifts to the non-moving party to "set forth specific facts showing a triable issue of material fact." Id. at 448–49; see also Fed. R. Civ. P. 56(e). If "the non-moving party fails to make a sufficient

---

[15] As discussed below, Rule 56 does not authorize a Motion to Strike as brought by Plaintiff.

[16] In her Reply in Support of her Motion for Summary Judgment, Plaintiff acknowledges Defendant's Statement of Undisputed Material Facts, (ECF No. 37), and apparently incorporates her responses to Defendant's statement of relevant factual background within her Motion to Strike. (See ECF No. 60.) This makes Defendant's Motion for Summary Judgment fully briefed.

showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d 911, 914 (6th Cir. 2013) (quoting Chapman v. UAW Local 1005, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)) (internal quotation marks omitted). The decisive "question is whether 'the evidence presents a sufficient disagreement to require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a matter of law.'" Johnson v. Memphis Light Gas & Water Div., 777 F.3d 838, 843 (6th Cir. 2015) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986)).

To show whether a fact is genuinely disputed, a party must "cit[e] to particular parts of materials in the record," "show[] that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Bruederle, 687 F.3d at 776 (alterations in original) (quoting Fed. R. Civ. P. 56(c)(1)); see also L.R. 56.1(b)(3). The Court must consider the cited materials and may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Court, however, need not "search the entire record to establish that it is bereft of a genuine issue of material fact." Pharos Capital Partners, L.P. v. Deloitte & Touche, 535 F. App'x 522, 523 (6th Cir. 2013) (per curiam) (internal citations omitted). The non-moving party must present enough affirmative evidence to support a reasonable jury's verdict in its favor. Tingle v. Arbors at Hilliard, 692 F.3d 523, 529 (6th Cir. 2012) (citing Liberty Lobby, 477 U.S. at 251). Statements contained in an affidavit that are "nothing more than rumors, conclusory allegations and subjective beliefs" are insufficient to defeat a motion for summary judgment. See Mitchell, 964 F.2d at 584–85.

11

## III.    ANALYSIS

Before the Court are the Parties' Cross-Motions for Summary Judgment.  The Court's analysis applies the burden-shifting framework as appropriate to the facts it considers.

Because this case falls within the Court's diversity jurisdiction, the Court applies Tennessee law.  See Howell v. Colonial Penn. Ins. Co., 842 F.2d 821, 822 (6th Cir. 1987).

Under T.C.A. § 56-7-103, an insurance policy can be rescinded as void ab initio when the applicant made certain misrepresentations with the intent to deceive or with the impact of increasing the insurer's risk of loss.  Defendant alleges two such material misrepresentations in Mr. Woods' Application, namely negative answers to Questions 12(b) and 15(f).  (See ECF No. 36-1 at PageID 337; ECF No. 55 at PageID 1811–12.)  Thus, the Court's analysis focuses on these alleged misrepresentations and the relevant material facts on the record.  The Court first analyzes whether there is a lack of genuine dispute as to material facts regarding Questions 12(b) and 15(f).  See Fed. R. Civ. P. 56(a).  The Court then analyzes whether any one of Mr. Woods' answers was a material misrepresentation to determine if either party is entitled to judgment as a matter of law.  See id.; see also Tenn. Code. Ann. § 56-7-103.

Before turning to its summary judgment analysis, however, the Court addresses Plaintiff's Motion to Strike, (ECF No. 56).

### A.    Plaintiff's Motion to Strike

In her Motion, Plaintiff asserts that Defendant failed to comply with Local Rule 56.1 by not filing a "separate, concise enumerated statement of undisputed material facts" with its Motion for Summary Judgment.  (ECF No. 56-1 at PageID 1824.)  Plaintiff proceeds to request, "pursuant" to Federal Rule of Civil Procedure 56, that the Court strike multiple statements

within Defendant's Relevant Factual Background section in its Motion for Summary Judgment "as not material to the issues in this case in violation of LR 56.1(a)."  (Id.)

In response, Defendant points the Court to its submission of a "separate, concise enumerated statement of undisputed material facts," albeit docketed in a separate entry from its Motion for Summary Judgment.  (ECF No. 58 at PageID 1841; ECF No. 37 (Defendant's Statement of Undisputed Material Facts).)  Plaintiff acknowledges this compliant statement in her Reply in support of her Motion for Summary Judgment.  (ECF No. 60 at PageID 1858.) Defendant also requests summary dismissal of Plaintiff's Motion to Strike for Plaintiff's failure to consult with Defendant's Counsel and include a certificate of consultation with her Motion in violation of Local Rule 7.2(a)(1)(B).  (ECF No. 58 at PageID 1842.)  That Rule states that "[f]ailure to attach an accompanying certificate of consultation may be deemed good grounds for denying the motion."  Defendant argues Local Rule 7.2(a)(1)(B)'s exception for motions under Federal Rule of Civil Procedure 56 does not apply to Plaintiff's Motion because Rule 56 does not authorize a "motion to strike" as requested by Plaintiff.  (ECF No. 58 at PageID 1843, 1845.)

The Court finds Defendant's procedural argument persuasive.[17]  By acknowledging Defendant's Statement of Undisputed Material Facts, (see ECF No. 60 at PageID 1858), Plaintiff admits that her Motion to Strike is at least moot in part.  Furthermore, Plaintiff should have first consulted with Defendant's Counsel pursuant to Local Rule 7.2(a)(1)(B). Accordingly, Plaintiff's Motion to Strike is **DISMISSED AS MOOT**.

The Court now turns to the Parties' Cross-Motions for Summary Judgment.

---

[17] The Court declines to review the merits of Plaintiff's Motion and Defendant's arguments thereon based on the Motion's procedural deficiencies.  See L.R. 7.2(a)(1)(B).

### B.     Lack of Genuine Dispute of Material Fact

A material fact is one that, if proven, "would establish or refute an essential element of the cause of action or defense." Bruederle, 687 F.3d at 776.  The material facts here relate to Mr. Woods' health conditions and knowledge thereof at the time of the Application, Mr. Woods' medical records, and Defendant's policies on extending certificates and underwriting life insurance policies.  (See ECF No. 36-1 at PageID 337; ECF No. 55 at PageID 1811–12); see also id.

Under T.C.A. § 56-7-103, just one material misrepresentation on an insurance policy application allows the insurance company to rescind the policy as void ab initio. See Howell v. Colonial Penn Ins. Co., 842 F.2d 821, 824 (6th Cir. 1987).  Thus, so long as there is a lack of genuine dispute of material fact as to one of the alleged material misrepresentations in Mr. Woods' Application, the Court's analysis may proceed. See Fed. R. Civ. P. 56(a); Bruederle, 687 F.3d at 776.

There are multiple material facts that are not in dispute. See supra Part I.A.  The Parties do not dispute the timeline of Mr. Woods' relevant medical visits and the information shared with Mr. Woods at each. See id.  The Parties also do not dispute that underwriters employed by Defendant testified that they relied on the accuracy of the Application.  (ECF No. 55 at PageID 1811.)

The Court first addresses the material facts related to Question 12(b), then those related to Question 15(f).

### i.     Question 12(b) – Referral Orders

Question 12(b) asked: "Within the past 2 years, have you[ b]een advised to have a check up, consultation, medication, treatment, surgery, hospitalization, lab test or diagnostic test

(other than for HIV) that has not yet been started or completed, or the results of which are not yet known?" (ECF No. 36-2 at PageID 359.)

The Parties agree that at the time of the March 2021 Walnut Grove Clinic visit, NP Motlow issued two referral orders for Mr. Woods: one for a cardiologist for his blood pressure management, and one for a urologist for "further evaluation and management" of the blood in his semen. (ECF No. 53 at PageID 1640–41.) It is also undisputed that there is no evidence that Mr. Woods ever completed appointments for either of his referrals. (ECF No. 55 at PageID 1808.)

Defendant argues that the lack of completion of the referral orders on the record, paired with Mr. Woods' records at the Walnut Grove Clinic, are undisputed material facts that confirm that the referral orders were "not yet . . . started or completed" at the time of the Application. (See ECF No. 36-1 at PageID 341–42; see also ECF No. 36-2 at PageID 359.) Plaintiff does not dispute the orders or their apparent pending status. (See ECF No. 53 at PageID 1643; ECF No. 55 at PageID 1808.) Forming reasonable inferences in the light most favorable to Plaintiff, see Robertson, 753 F.3d at 614, Defendant has met its initial burden regarding the absence of a genuine dispute of material fact as to Question 12(b). See Mosholder, 679 F.3d at 448.

The burden then shifts to Plaintiff to show a genuine triable issue of material fact. See Mosholder, 679 F.3d at 448–49. Plaintiff does not dispute that Mr. Woods received the two referral orders in March 2021 or that there is no evidence that he ever completed such. (See ECF No. 55 ¶¶ 20, 22, 24, 27; see also ECF No. 53 ¶ 29.) In response to Defendant's statement that "Mr. Woods was instructed to return to [the Walnut Grove Clinic] in one month after completing his referrals to cardiology for uncontrolled hypertension and urology for the blood in his semen," Plaintiff merely asserted, "Disputed." (ECF No. 55 at PageID 1806.) This is an

insufficient dispute assertion, as it does not cite to anything on the record nor does it state exactly what part of the statement it is disputing.  See Fed. R. Civ. P. 56(c)(1); Bruederle, 687 F.3d at 776.[18]  Furthermore, Plaintiff relies elsewhere on the same medical records that show that the referral orders were not completed and Mr. Woods did not return to the Walnut Grove Clinic for a follow-up.  Thus, Plaintiff has failed to meet her burden of showing a genuine triable issue of material fact related to Question 12(b).  See Mosholder, 679 F.3d at 448–49.

Accordingly, the Court finds that "there is no genuine dispute as to any material fact" regarding Mr. Woods' referral orders at the time he answered Question 12(b) on the Application.  See Fed. R. Civ. P. 56(a).

ii.    Question 15(f) – Blood in Urine, Kidney Disorder, or Genitourinary Organ Disorder

Question 15(f) asked, "Within the past 10 years, have you been diagnosed with, or received treatment or medication, tested positive or been given medical advice for . . . [b]lood in the urine, . . . or a disease or disorder of the . . . kidney, [or] genito-urinary organs[?]" (See ECF No. 36-2 at PageID 360.)  Defendant alleges Mr. Woods made a misrepresentation by not answering in the affirmative to Question 15(f).  (See ECF No. 36-1 at PageID 336.)  With a multifaceted question like this, there must be at least one element on which there is no genuine dispute of material fact for Question 15(f) to be a basis for summary judgment.  See Fed R. Civ P. 56; Howell, 842 F.2d at 824 (any material misrepresentation can be grounds for rescinding a life insurance policy as void ab initio).

---

[18] Defendant counters that "[t]he only reasonable conclusion from the sequence and comprehensive review of these Referral Orders is that Mr. Woods was to return to the clinic in one month in order to give him time to complete his various referrals."  (ECF No. 59 at PageID 1849.)  While this asserted conclusion is not necessarily determinative that the orders were in fact pending, this also requires a finding of fact from the Court which is not appropriate at this stage.  See Fed. R. Civ. P. 56(a).

a. Defendant's Motion

Defendant asserts that there is no genuine dispute that Mr. Woods "was experiencing blood in his urine, blood in his semen, uncontrolled hypertension, and elevated creatinine levels on March 3, 2021 when he presented to [the Walnut Grove Clinic], received several tests, and was referred to a cardiologist and urologist for follow-up appointments and care." (ECF No. 36-1 at PageID 337.)[19]

In support of the alleged blood in the urine misrepresentation, Defendant cites the Walnut Grove Clinic records for Mr. Woods' March 3, 2021, visit, which states "Reason for Visit[:] Blood in urine." (ECF No. 36-1 at PageID 340–41.)[20]  Drawing reasonable inferences in favor of Plaintiff as the non-movant, see Robertson, 753 F.3d at 614, there is a genuine issue of material fact regarding Mr. Woods' alleged misrepresentation about any blood in his urine. Plaintiff's deposition testimony about Mr. Woods' symptoms of blood in his semen preceding the visit and the lack of any discussion of blood in the urine in the visit notes cast doubt on whether the actual reason for Mr. Woods' visit was blood in his urine.  (See ECF No. 53 at PageID 1642–43; ECF No. 36-8 at PageID 424.)  Defendant also acknowledges that Mr. Woods received a negative test result for blood in the urine.  (See ECF No. 59 at PageID 1849.)  This is not sufficient proof to meet Defendant's "initial burden of demonstrating the absence of any genuine issue of material fact."  See Mosholder, 679 F.3d at 448.  Thus, there is a genuine

---

[19] In its analysis, Defendant's Motion does not specifically connect how these facts indicate a misrepresentation to Question 15(f).  (See ECF No. 36-1 at PageID 348 ("As explained in Section II, supra, there is no genuine issue of material fact that Mr. Woods made at least one misrepresentation on the subject Application.").)

[20] Defendant also cites this entry as support that "[c]learly, Mr. Woods sought medical advice when he presented to [Walnut Grove Clinic] for blood in urine, in addition to the other medical problems he was experiencing that day."  (ECF No. 57 at PageID 1834.)  While that is not clear, as discussed below, this asserted fact is also not material to the issue of whether Mr. Woods had "been given medical advice" for blood in his urine.  (See ECF No. 36-2 at PageID 360.)

dispute of material fact as to whether Mr. Woods received medical treatment or advice regarding blood in his urine.  See id.

In support of the alleged kidney disorder or disease misrepresentation, Defendant points to Mr. Woods' documented elevated serum creatinine levels in March 2021.  (See ECF No. 36-1 at PageID 337.)  However, Mr. Woods' creatine levels were in the normal range at his March Walnut Grove Clinic visit.  (ECF No. 53 at PageID 1641.)  The elevated serum creatinine level was only documented during his September 2020 appointment with NP Jaipuri.  (See ECF No. 53 at PageID 1640.)  The listed diagnosis code of R.79.89 at both visits, however, referred to "other specified abnormal findings of blood chemistry" under the umbrella of "abnormal findings on examination of blood, without diagnosis."  (ECF No. 53 at PageID 1640 (cleaned up).)  There is also no evidence of medical treatment regarding these levels.  Defendant also fails to prove how the creatinine levels are connected to Mr. Woods' kidney function and any potential disorder thereof.  Thus, there is a genuine dispute of material fact as to whether Mr. Woods received medical treatment or advice regarding a disorder or disease of his kidneys.  See Mosholder, 679 F.3d at 448.

In support of the alleged genitourinary organ disorder or disease misrepresentation, Defendant points to the blood in the semen prompting Mr. Woods' visit to the Walnut Grove Clinic.  (ECF No. 36-1 at PageID 337.)  Defendant does not dispute that Mr. Woods only experienced blood in his semen for the limited two-week period preceding the visit.  (ECF No. 53 at PageID 1642–43.)  It is also undisputed that NP Motlow used the ICD code for hematospermia and that there was an assessment plan formed.  (See ECF No. 53 at PageID 1640–41.)  Thus, there is no genuine dispute of material fact for Mr. Woods' conditions relevant

to any disorder or disease of the genitourinary organs under Question 15(f).  See Mosholder, 679 F.3d at 448.

Accordingly, the Court finds that there is genuine dispute of material fact as to some of Mr. Woods' medical conditions relevant to Question 15(f), namely any blood in the urine or disorder or disease of the kidney.  The Court finds, however, an absence of a genuine dispute of material fact as to Mr. Woods' experience of blood in his semen as relevant to any disorder or disease of the genitourinary organs under Question 15(f).

### b.  Plaintiff's Motion

Plaintiff asserts that it is undisputed that Mr. Woods received no diagnosis or medical advice regarding blood in his urine or a disorder or disease of the kidney and genitourinary organs.  (See ECF No. 38-2 at PageID 521–22.)  For the reasons listed above, there is a genuine dispute of material fact about medical advice on the issues of the blood in urine and kidney disorder or disease.  See supra Part III.B.ii.a.  Thus, Plaintiff fails to meet her burden as to these facts as related to Question 15(f).  See Robertson, 753 F.3d at 614.

### iii.  Conclusion

Both Parties fail to show a lack of a genuine dispute of material fact as to Mr. Woods' allegedly misrepresented conditions involving blood in the urine or the kidneys under Question 15(f).  The Court does find, however, that there is no genuine dispute of material fact as to the referral orders for Mr. Woods, which are relevant to Question 12(b), and Mr. Woods' limited hematospermia, which is relevant to Question 15(f).  Thus, the Court's summary judgment analysis may proceed.  See Fed. R. Civ. P. 56(a).

**C.      Entitlement to Judgment as a Matter of Law**

The questions of law under T.C.A. § 56-7-103 follow a two-step inquiry: (1) Was there a misrepresentation? (2) Was there an intent to deceive or an increase of the risk of loss to the insurer?  See also Frank v. Nationwide Mut. Fire Ins. Co., No. 3:04CV00025, at 2006 WL 861392 at *4 (M.D. Tenn. 2006) (citing Gatlin v. World Serv. Life Ins. Co., 616 S.W.2d 606, 608 (Tenn. 1981)) (noting "misrepresentation" is a "separate and distinct" concept from "intent to deceive" or "increase in the risk of loss").

"[T.C.A.] § 56–7–103 authorizes an insurance company to deny a claim if the insured obtains the policy after misrepresenting a matter that increased the company's risk of loss." Lane v. Am. Gen. Life & Acc. Ins. Co., 252 S.W.3d 289, 295 (Tenn. Ct. App. 2007) (quoting Smith v. Tenn. Farmers Life Reassurance Co., 210 S.W.3d 584, 589 (Tenn. Ct. App. 2006)) (internal citations omitted).  A misrepresentation that increases the company's risk of loss is a material misrepresentation under § 56–7–103.  See id.

If Mr. Woods' omission of any of his pending referral orders was a material misrepresentation as to Question 12(b), Defendant has met its burden to show that it is entitled to judgment as a matter of law.  See T.C.A. § 56–7–103; Fed. R. Civ. P. 56(a).  If, however, the omission of both pending referrals was not a material misrepresentation, Defendant has failed to meet its burden.  See id.  The same applies to Mr. Woods' omission of his hematospermia as to Question 15(f).  See id.  If Defendant fails to meet its burden, there remains a genuine dispute as to material facts underlying the other alleged misrepresentations to Question 15(f).  See supra Part III.B.  In that case, summary judgment would be inappropriate.  See Fed. R. Civ. P. 56(a).

i.     Misrepresentation to 12(b)

"To avoid coverage, the insurer must first show that the applicant's answer contained a misrepresentation." Jesmer v. Erie Ins. Co., No. 2:19-cv-02715-MSN-atc, 2021 WL 6332790, at *3 (W.D. Tenn. Feb. 10, 2021), aff'd, No. 21-5186, 2021 WL 4473396 (6th Cir. Sept. 30, 2021). "[T]he Court can decide this issue at the summary judgment stage if 'reasonable minds' could only reach one conclusion as to the alleged misrepresentation." Id. "The fact misrepresented need not be with reference to a hazard which actually produced the loss in question." Loyd v. Farmers Mut. Fire Ins. Co., 838 S.W.2d 542, 545 (Tenn. Ct. App. 1992).

This analysis turns on the language in Question 12(b): "Within the past 2 years, have you[ b]een advised to have a check up, consultation, medication, treatment, surgery, hospitalization, lab test or diagnostic test (other than for HIV) that has not yet been started or completed, or the results of which are not yet known?" (ECF No. 36-2 at PageID 359.)

The Court reviews the meaning of the Question 12(b) language using basic contract interpretation principles. See S. Trust Ins. Co. v. Phillips, 474 S.W.3d 660, 664–65 (Tenn. Ct. App. 2015) (internal citations omitted). "Where a question on an application is specific and unambiguous, it can be easily determined whether the answer is true or not." Frank v. Nationwide Mut. Fire Ins. Co., No. 3:04CV00025, 2006 WL 861392 at *4 (M.D. Tenn. 2006) (citing Gatlin, 616 S.W.2d at 610) (other internal citations omitted). "However, where a question on an application is broad and ambiguous, it is not a question of law, but rather a question of fact as to whether the answer given to the question was true or false." Id. (internal citations omitted). "Under Tennessee law, a contractual term is ambiguous only if it is 'of uncertain meaning and may fairly be understood in more ways than one.'" Id. (quoting Farmers-Peoples Bank v. Clemmer, 519 S.W.2d 801, 805 (Tenn. 1975)).

Defendant argues that Mr. Woods made a misrepresentation by answering Question 12(b) in the negative.  (See ECF No. 36-1 at PageID 337, 348.)  Defendant points to the referral orders to a cardiologist and an urologist issued by NP Motlow in March for Mr. Woods that were still pending in May.  (ECF No. 36-1 at PageID 353.)

Defendant frames Question 12(b) as a valid "blanket inquiry" like that in <u>American General Life Insurance Company v. Underwood</u>, 85 F. Supp. 3d 944 (E.D. Tenn. 2015).  (See ECF No. 52 at PageID 1628.)  In <u>Underwood</u>, a supplemental health statement required for the issuance of the life insurance policy asked if the proposed insured had "[c]onsulted a doctor or other practitioner or received medical or surgical advice or treatment" since the submission of the application for coverage.  85 F. Supp. 3d at 949.  The court there found that "[t]he request is a blanket inquiry and *obviously* seeking information about any doctor visit or treatment."  <u>Id.</u> (emphasis added).  The court also found that the failure to disclose the proposed insured's visit to a doctor in between the signing of the application and the health statement was a misrepresentation under T.C.A. § 56-7-103.  <u>Id.</u> at 951.

The Court finds Question 12(b), while complex, is clear.  This finding is supported by both Parties moving for summary judgment based in part on this question. In so doing, the Parties necessarily assert in part that the Court could decide there is no genuine issue of material fact as to the question being specific and unambiguous, see <u>Frank</u>, 2006 WL 861392 at *4, and one party is entitled to judgment as a matter of law based on this question.[21]

---

[21] In her Response to Defendant's Motion, Plaintiff takes the position that Question 12(b) is in fact "broad and ambiguous" such that the Court cannot grant summary judgment in favor of Defendant based on that question. (ECF No. 54 at PageID 1651–52.)  In support, Plaintiff argues that Defendant's reference to Plaintiff's deposition testimony equates to Defendant's assertion of and reliance on Plaintiff's status as the one advising Mr. Woods to go to the doctor about the blood in his semen.  (Id. at PageID 1651.)  However, Defendant clearly relies on the pending referral orders from NP Motlow as the relevant advice for Question 12(b).  (See ECF No. 36-1 at PageID 353.)  Defendant also counters Plaintiff's position by pointing to the lack of questions asked by Mr. Woods and Plaintiff about Question 12 during the hour-long completion of the Application with Ms. Crawford as "material evidence in Forester's favor that the Application was unambiguous."  (ECF No. 57 at

Plaintiff argues that the referral orders do not fall into the purview of Question 12(b). (ECF No. 38-2 at PageID 517–19.) First, Plaintiff argues that the terms "been advised to have a consultation" and "referral" clearly have two different meanings. (Id. at PageID 517.) Citing various dictionary entries, Plaintiff claims "a consultation is the process of conferring with a doctor or getting advice or an opinion, but a referral is the act of sending or directing or transferring someone to a specialist for specialized, definitive treatment, aid, information, or decision." (Id. at PageID 518.) Thus, Plaintiff argues, the omission of the referral orders on the Application was not a misrepresentation.

The Court finds that the referral orders were elicited by Question 12(b) and were required to be disclosed by Mr. Woods. Plaintiff's framing of Question 12(b) unfairly narrows the text and thus the scope of the question. The relevant inquiry is not whether a consultation is a referral, but rather whether advising a patient to have a consultation is a referral. In the context of the Application, the plain meaning of the question "have you been advised to have a consultation" unambiguously includes a referral order from one doctor to visit another doctor for advice and/or treatment. The referral orders for Mr. Woods to visit a cardiologist and urologist for his blood pressure management and unexplained hematospermia, respectively, were precisely that. Thus, the Court finds that Mr. Woods' answer in the negative to Question 12(b) was a misrepresentation on the Application because he had been advised to have a consultation "not yet . . . started or completed."

---

PageID 1833.) Considering Plaintiff's new and contradictory position on Question 12(b) relies solely on this erroneous misconstruction of Defendant's argument, the Court need not discuss further the asserted ambiguity of Question 12(b).

ii.     Misrepresentation to Question 15(f)

Although the Court has already determined that there was a misrepresentation to Question 12(b), the Court turns briefly to Question 15(f) as a potential misrepresentation and finds it insufficient to show Defendant is entitled to judgment as a matter of law on that ground.

Question 15(f) asked if Mr. Woods had "been diagnosed with, or received treatment or medication, tested positive or been given medical advice for" any disorder or disease of the genitourinary organs.  (See ECF No. 36-2 at PageID 360.)   In its Motion for Summary Judgment, Defendant does not explicitly argue how Mr. Woods' omission of his hematospermia was a misrepresentation to this question.  (See ECF No. 36-1 at PageID 348, 353–54 (focusing on the pending referral orders).)   The only documented time Mr. Woods sought medical attention about the blood in his semen was his Walnut Grove Clinic visit.  See supra Part I.A.ii. There is no evidence that he received any treatment, medication, or medical advice regarding that from NP Motlow.  See id.  The sole diagnosis of hematospermia is also insufficient to support a disorder or disease of genitourinary organs.  Thus, Defendant has not met its burden to show that Mr. Woods made a misrepresentation to Question 15(f) such that it is entitled to judgment as a matter of law on that basis.

iii.     Increase of the Risk of Loss

Under T.C.A. § 56–7–103, a material misrepresentation is one that "increased the insurance company's risk of loss."  Smith v. Tenn. Farmers Life Reassurance Co., 210, S.W.3d 584, 590–91 (Tenn. Ct. App. 2006).  "A misrepresentation in an application for insurance increases the insurance company's risk of loss if it naturally and reasonably influences the judgment of the insurer in making the contract."  Lane, 252 S.W.3d at 295–96 (quoting Smith, 210 S.W.3d at 589 (Tenn. Ct. App. 2006)) (internal citations omitted).  "[A] showing that the

insurer was denied information that it, in good faith, sought and deemed necessary to an honest appraisal of insurability is sufficient to establish the grounds for an increased risk of loss." Id. at 296 (internal citations omitted).

"Once it is determined that a misrepresentation exists, it is a question of law, not fact, for the court as to whether the misrepresentation increased the risk of loss." Howell v. Colonial Penn Ins. Co., 842 F.2d 821, 823 (6th Cir. 1987). "[A]ny misrepresentation which naturally and reasonably influences the judgment of the insurer in making the contract is a misrepresentation that 'increases the risk of loss' within the meaning of the statute." Id. at 824 (internal citations omitted). "The rule applies with special force where the policy involves the soundness of health of the applicant and is issued without a medical examination." Little v. Wash. Nat. Ins. Co., 241 S.W.2d 838, 841 (Tenn. Ct. App. 1951).

Courts can look to the questions the insurance company included in its application to determine what the company found relevant to its risk of loss. Lane, 252 S.W.3d at 296. Courts can also rely on the testimony of insurance company representatives to establish how truthful answers on the application would have affected the company's decision to issue the policy. Bagwell v. Canal Ins. Co., 663 F.2d 710, 712 (6th Cir. 1981).

Defendant argues Mr. Woods' omission of accurate information regarding his pending referrals in his response to Question 12(b) was material and thus increased its risk of loss. (See ECF No. 36-1 at PageID 353–54.) Defendant's underwriters testified that they rely on pending referrals in deciding whether to issue a policy or the amount of the premium. (See id. at PageID 353.) Thus, Defendant argues it was within its rights under T.C.A. § 56–7–103 to rescind the Certificate as void ab initio "once it learned that Mr. Woods made material misrepresentations

regarding his pending medical appointments on his Application." (ECF No. 36-1 at PageID 354.)

In support, Defendant points to the Sixth Circuit's affirmance of summary judgment in favor of the defendant insurance company in Lane. (See id. at PageID 351.) There, the Sixth Circuit found there were undisputed material facts that the proposed insured answered at least some questions inaccurately upon his knowledge and belief, which constituted a material misrepresentation that increased the insurance company's risk of loss. See Lane, 252 S.W.3d at 297. The trial court found that had the insurance company "been informed of the recent ER visit and the medical tests and the results of those tests, then the decedent would not have been insured or his premiums would have been higher." Id. at 294–95. This evidence supported a finding of increase of risk of loss. See id. at 297.

Plaintiff argues that Defendant provides "no factual or legal basis" of how either pending referral order increased Defendant's risk of loss or show any specific underwriting guideline that would bar Defendant from issuing the Certificate for pending referrals for an undiagnosed disease. (ECF No. 54 at PageID 1654.) Plaintiff acknowledges that Defendant relies on the testimony of its underwriters, including its Chief Underwriter. (Id. at 1653–54.) Under Tennessee law, however, this type of testimony is sufficient to establish a "factual basis" for Defendant's increased risk of loss. See Bagwell, 663 F.2d at 712. Thus, Plaintiff's argument fails here.

As for the legal basis, Plaintiff argues that Defendant fails to prove "how the pending [cardiology referral] for management of Mr. Woods' hypertensive disorder[] increased [Defendant's] risk of loss when it already accepted and approved the risk of insuring him knowing he has a high blood pressure/hypertensive disorder being managed by medication."

26

(ECF No. 54 at PageID 1654.)  The Court need not address this argument since the Court finds there is merit as to Defendant's arguments as to the urology referral order.

Plaintiff argues that a pending referral about a potential future diagnosis, namely any diagnosis or disease related to Question 15(f) would not increase Defendant's loss.  (ECF No. 54 at PageID 1654, 1659.)  The concept of "loss" is not exclusively defined by the actual cause of the insured's death.  See Loyd, 838 S.W.2d at 545.  It also encompasses the insurance company's receipt of its desired information so that it can make a fully informed choice about issuing the policy.  See Lane, 252 S.W.3d at 296.  The Court may rely on what information Defendant's underwriters state they relied upon as proof of the increased risk of loss, including questions on the Application.  See Bagwell, 663 F.2d at 712; see also id. ("[A] showing that the insurer was denied information that it, in good faith, sought and deemed necessary to an honest appraisal of insurability is sufficient to establish the grounds for an increased risk of loss.").  Question 12(b) specifically inquired about pending consultations.  (ECF No. 36-2 at PageID 359.)  The pending urology referral order falls squarely within the scope of that question.  Thus, Mr. Woods' omission of the urology referral order could increase the risk of Defendant's loss.

There only needs to be one material misrepresentation for the Certificate to be void ab initio under Tennessee state law.  See Howell, 842 F.2d at 824.  Plaintiff does not dispute that Mr. Woods never followed through with the cardiology and urology referrals.  (ECF No. 55 at PageID 1808.)  Thus, at the time of the Application, the referrals for consultation "ha[d] not yet been started or completed."  (See ECF No. 36-2 at PageID 359.)  The cardiology referral arguably may be a debatable question of law given the hypertension disclosure to Question 15(a).  The issues underlying the urology referral, however, were not in any way disclosed or indicated on the Application.  Thus, Mr. Woods' misrepresentation about his urology referral

27

order did increase Defendant's risk of loss and thus was material under T.C.A. § 56-7-103.  <u>See</u>
<u>Lane</u>, 252 S.W.3d at 295–96; <u>Smith</u>, 210, S.W.3d at 590–91.    Thus, Defendant has shown that
it is entitled to judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56(a).

## IV.    CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is
**GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED**.  Plaintiff's Motion to
Strike is also **DENIED AS MOOT**. A Judgment will be entered dismissing the case with
prejudice.

**SO ORDERED**, this 28th day of February, 2025.

*/s/ Jon P. McCalla*
JON P. McCALLA
UNITED STATES DISTRICT JUDGE